UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:09-CR-085 |
| | ) | |
| ANDREW AMIN MONTGOMERY | ) | |

## **MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 20].[1] The United States has responded in opposition [doc. 22], and the defendant has not replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the motion will be denied.

### I.     BACKGROUND

In September 2011, this Court sentenced the defendant to a net term of 275 months' imprisonment in the above-cited case numbers for cocaine base, money laundering, and methamphetamine offenses. [Doc. 4]. In November 2019, this Court granted the defendant's counseled motion for sentence reduction pursuant to Section 404 of the First Step Act of 2018, reducing the net sentence to 209 months. [Docs. 18-19]. That term included a 12-month downward variance based on the defendant's post-offense

---

[1] The motion asks for a reduction of sentence in both Case Nos. 2:09-CR-085 and 2:09-CR-031 but was docketed only in Case No. 2:09-CR-085. As such, record citations herein are only to the docket in Case No. 2:09-CR-085.

rehabilitative efforts. [Doc. 18, p. 9].

The defendant is presently incarcerated at FCI Ray Brook with a projected release date of January 19, 2024. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 8, 2021). In his motion, the defendant seeks compassionate release due to the COVID-19 pandemic, his desire to be more involved in the life of his oldest son, and a pandemic-related delay in his transfer to the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP").

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant

to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, ___ F.3d ___, 2021 WL 50169 (6th Cir. Jan. 6, 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

**A. Exhaustion**

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 20]. The Court thus has authority under § 3582(c)(1)(A) to address the motion. *See Alam*, 960 F.3d at 832.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

## B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, his desire to be more involved in the life of his oldest son, and a pandemic-related delay in his transfer to RDAP. Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

> > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .
>
> (5) any pertinent policy statement—
>
> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> >
> > (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's prison, there are currently 10 inmates and three staff positive for COVID-19, with 42 inmates and 13 staff having recovered, and no deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 8, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation is presently experiencing an escalating "surge upon a surge" in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594,

597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Next, the defendant's desire to be more involved in his son's life is commendable. However, it is painfully common in this Court's criminal cases to see broken families and relatives in need. Sadly, it is more the "rule" than the "exception." This consideration is therefore neither extraordinary nor compelling such as to justify a grant of compassionate release. Similarly, any delay in the defendant's RDAP participation is assuredly not an uncommon happening at this point in history.

Turning to the defendant's background and the nature and circumstances of the instant offenses, in this case the defendant admittedly conspired to distribute "many kilograms" of cocaine base. [Presentence Investigation Report ("PSR"), ¶¶ 11-12, 26]. On "multiple" occasions, "the defendant and his co-conspirators dressed to look like police officers, raided [the homes of other drug dealers] and stole all of the drugs or cash available." [*Id.*, ¶ 27]. The defendant "would stage the robber[ies]," each participant would have a weapon including at least one assault rifle and one shotgun in the group, with "an entry team and a perimeter team" wearing "vests which looked similar to body armor." [*Id.*, ¶ 85]. On one occasion, "approximately 70 pounds of crystal methamphetamine" was stolen. [*Id.*]. The defendant also laundered hundreds of thousands of dollars through at least six bank accounts. [*Id.*, ¶¶ 28-33, 37]. Plainly, he was the very opposite of a mere street dealer.

6

Prior convictions include cruelty to animals, multiple controlled substance offenses, and obstruction (originally charged as felony escape). [*Id.*, ¶¶ 71-75]. Probation violation proceedings were pending at the time of sentencing in this case. [*Id.*, ¶ 73]. The defendant's history of polysubstance abuse dates back to age ten. [*Id.*, ¶ 92].

The BOP's SENTRY Report shows that the defendant has participated in vocational and educational programming and has obtained his G.E.D. For that, he is commended. There have been three disciplinary infractions—insolence to staff (in July 2020), disruptive conduct, and possession of an unauthorized item. The defendant's security classification is low, but the BOP nonetheless considers him (as recently as November of 2020) to have a high risk of recidivism.

The Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. Having done so, the Court finds no "extraordinary and compelling reason" to justify compassionate release. The Court appreciates the defendant's rehabilitative efforts and concern for his family. Those points are outweighed, however, by his criminal history, his egregious conduct in this case, and the 36 months of actual time remaining on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). The substantial sentence reduction requested in this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes.

7

## IV. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 20] is **DENIED**.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge